THE GOLDING-KEENE COMPANY AND THE FELDSPAR CORPORATION *v.* UNITED STATES (E. DILLINGHAM, INC., A/C RHEEM MFG. CO., PARTIES IN INTEREST) (No. 5048)[1]

UNITED STATES (E. DILLINGHAM, INC., A/C RHEEM MFG. CO., PARTIES IN INTEREST) *v.* THE GOLDING-KEENE COMPANY AND THE FELDSPAR CORPORATION (No. 5049)

United States Court of Customs and Patent Appeals, March 15, 1961

*Edwin G. Martin* for The Golding-Keene Company and The Feldspar Corporation (American Manufacturers)

*Barnes, Richardson & Colburn, Covington & Burling* (*Donald Hiss* and *Joseph Schwartz*, of counsel) for United States (E. Dillingham, Inc., a/c Rheem Manufacturing Co., Party in Interest)

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

WORLEY, Chief Judge, delivered the opinion of the court:

This case involves an appeal and cross-appeal from a judgment of the United States Customs Court, First Division (C.D. 2172),

---

[1] C.A.D. 766.

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

overruling a protest against the classification of ground nepheline syenite as sand, manufactured, under paragraph 1775 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802.

The Golding-Keene Company and the Feldspar Corporation, manufacturers of ground feldspar, protested the collector's classification under the provision of paragraph 516(b) of the Tariff Act of 1930, as American manufacturers of the same class of merchandise, and claimed that the importation should have been classified as ceramic fluxes under paragraph 231 of the Tariff Act of 1930 as modified. Appeal No. 5048 is from the Customs Court's refusal to sustain that protest.

Cross appeal No. 5049, is filed by E. Dillingham, Inc., a/c Rheem Mfg. Co., the importer and real party in interest, from the denial by the court below of its motion to dismiss. That motion is based on an alleged failure of the American manufacturers to comply with the procedural requirements of section 516(b). The party in interest asks us to consider its argument that the protest be dismissed only in the event we decide that the court below was in error in overruling the protest on the merits.

The pertinent portions of the Tariff Act of 1930 are:

Paragraph 1775, as modified:

Stone and sand: Burrstone in blocks, rough or unmanufactured; quartzite; traprock, rottenstone, tripoli, and sand, crude or manufactured; silica; cliff stone, freestone, granite, and sandstone, unmanufactured, and not suitable for use as monumental, paving or building stone; all the foregoing not specially provided for_____ Free

Paragraph 231, as modified by T.D. 54108:

Smalts, frostings, and all ceramic and glass colors, fluxes, glazes, and enamels: Ground or pulverized_____ 12½% ad val.

Four witnesses testified on behalf of appellants, American manufacturers, and three on behalf of appellee importer. Numerous exhibits were received in evidence.

The record shows that nepheline syenite is a crystalline igneous rock, being a mineral aggregate of nepheline, albite and microdine. The specific merchandise at bar is stipulated as being ground nepheline syenite of 200 mesh. Analysis shows that it contains "60.50 silica, 23.11 aluminum, .09 iron, .30 calcium oxide, trace of magnesium oxide, 5.05 per cent potassium oxide, 10.18 per cent sodium oxide, .80 loss on ignition." The natural substance is ground or crushed into various grades or mesh sizes with its use dependent on the degree of fineness. The 200 mesh form is used as a flux in the body of ceramic whiteware, whereas a coarser grade such as 20 mesh is primarily used in the glass industry as a source of alumina to improve the corrosion resistance and strength of glass.

From the record it is apparent that flux may be broadly defined as "any material which is added to a mix to promote fusion." Witnesses for both parties agree that flux, in connection with ceramic decorating, designates "a prepared low-melting glass, usually colorless, which may be mixed with pigments to produce vitrifiable coatings on glass or on clay ware." Smalts, frostings, ceramic colors, glazes and enamels are included within that definition. The evidence shows that 200 mesh nepheline syenite is not defined as decorative flux. Pertinent in this regard is the testimony of one of appellees' witnesses, a professor in the Department of Ceramic Engineering at Ohio State University and an acknowledged expert in the field of ceramics:

Q. I think you said that both feldspar and nepheline syenite are used in making various types of ware. A. Yes, sir.

Q. When used in making those wares are they fluxes in the broad sense? A. In the whiteware industry they are fluxes in the broad sense.

Q. Now coming to the narrower definition in connection with ceramic decorating, are they fluxes in that sense? A. They are not.

Q. Will you tell us why? A. Well, they there would be quite refractory materials, and by no means do the job at hand of providing the adherence of these colors at the temperatures entailed.

The Customs Court was of the opinion that, in view of the ambiguity in meaning of the word "flux," as reflected by the record, it was necessary to apply the rule of "noscitur a sociis," and, held that the generic term "fluxes" as it appears in association with the specific designations embodied in the provisions of paragraph 231 is limited to decorating fluxes and does not include body fluxes such as nepheline syenite, thus concluding that the collector's classification as "sand, unmanufactured" under paragraph 1775 was correct.

Appellants allege error in that conclusion and contend that the merchandise should be classified according to its chief use as a ceramic flux under paragraph 231 rather than under the sand provision of paragraph 1775. It is urged that the rule of "noscitur a sociis" is not applicable since there is no doubt or ambiguity as to the meaning of the statute. In addition, appellants contend that nepheline syenite is not sand within the meaning of paragraph 1775, that "sand" as used therein means common sand consisting primarily of free quartz or silica.

Full consideration has been accorded those contentions, together with the authorities cited in support thereof, but we are not convinced that the Customs Court erred in its holding.

Of the enumerated articles in paragraph 231, the record shows that all are used for decorating purposes. Smalts are used to introduce cobalt in diluted form as decoration on a ceramic body. A frosting is used to decorate the surface of a glass product by spraying it on

in powder form which, when heated, forms a coating that does not affect the body of the glass because fusion occurs before the glass melts. Ceramic and glass colors, glazes and enamels are similarly used and all provide decoration to the ceramic body. When considering the limited uses of all the other items mentioned in paragraph 231, it seems evident that "fluxes" are those intended for similar use. The term is ambiguous since it might apply either to fluxes used in the body or the finish of the ceramic article. We think that the doctrine of "noscitur a sociis" was properly applied by the Customs Court.

Further, we agree with the Customs Court that the legislative history of par. 231 reflects a consistent congressional intent to associate within a single tariff clause the class of articles or products used for decorating ceramics or glass. The following excerpt from the court's opinion is pertinent:

Reference to earlier tariff acts that embodied statutory language substantially the same as the provision in controversy lends support to the limited construction of paragraph 231 set forth herein. The Tariff Act of 1909 contained the first enactment of language comparable to that under discussion. Paragraph 56 thereof provided for "all glazes, fluxes, enamels, and colors used only in the manufacture of ceramic, enameled, and glass articles." in paragraph 63 of the Tariff Act of 1913, substantially the same provision was enacted in the wording, "all ceramic and glass fluxes, glazes, enamels, and colors." In each of the cited paragraphs of the Tariff Acts of 1909 and 1913, provision was made for smalts and frostings in a general clause that provided for various paints and colors.

When legislation that ultimately became the Tariff Act of 1922 was under consideration, the Tariff Commission submitted a report that contained general information concerning paragraph 63 of the Tariff Act of 1913. Although the term "fluxes" was not defined, a description was given of colors, glazes, enamels, smalts, and frostings, with the following comment (Tariff Information Surveys, A–15, 1922 (P.188)):

These products are used wholly in the ceramic industry in glazing, enameling, and decorating, and in the manufacture of ceramic decalcomanias, or mineral transfer designs for pottery use. * * *

With such information before it, Congress enacted, in paragraph 231 of the Tariff Act of 1922, the provision for "Smalts, frostings, and all ceramic and glass colors, fluxes, glazes, and enamels, all the foregoing ground or pulverized," which was identical with the language used in paragraph 231 of the Tariff Act of 1930 that is involved in this case.

We see no merit in appellants' argument that the instant merchandise is not "sand, manufactured" within the meaning of paragraph 1775. There is no evidence in the record that nepheline syenite is not sand and nothing to show that the collector's classification was incorrect.

The judgment is *affirmed*. In view of that holding, it is unnecessary to consider the cross appeal.

KIRKPATRICK, Judge, was present at the argument of this case, but did not participate in the decision.